# In the United States Court of Federal Claims

No. 24-1519
Filed: April 14, 2025
NOT FOR PUBLICATION

**JAMES EDWARD BRITT II,**

   *Plaintiff*,

v.

**UNITED STATES,**

   *Defendant*.

*James Edward Britt II, pro se*.

*Augustus Golden*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant.

**MEMORANDUM OPINION AND ORDER**

***HERTLING*, Judge**

  The plaintiff, James Edward Britt II, is a former employee of the Federal Deposit Insurance Corporation ("FDIC"). Proceeding *pro se*, he originally filed this suit in November 2022 against the FDIC in the United States District Court for the District of Columbia. The plaintiff sought damages in tort and for other claims, including those arising from an alleged employment contract with the FDIC. The district court granted the defendant's motion to dismiss the tort and non-contract claims and, in September 2024, transferred the contract claim against the United States to the Court of Federal Claims.

  The contract claim arises from the plaintiff's appointment to a position at the FDIC as a full-time equivalent ("FTE") employee at grade 11 of the FDIC's Corporate Grade classification, which was lower than his prior grade-12 classification.[1] In return for accepting a position at a lower grade, the plaintiff was paid a higher salary than grade 11 would typically afford. In return for that salary accommodation, the plaintiff signed an agreement acknowledging that he would not be eligible for a salary increase if he was re-promoted within 24 months. By the time the

---

[1] "Corporate Grade" is the FDIC's system of employee classification for compensation, as the FDIC does not rely on the General Schedule applicable to most federal employees. *Compensation*, FDIC (Jan. 12, 2025), https://www.fdic.gov/careers/compensation (last visited Mar. 27, 2025).

plaintiff was re-promoted after 38 months, however, the FDIC was operating under a policy that applied the re-promotion salary restrictions for the first 48 months after an employee's acceptance of a lower grade.  The plaintiff now alleges that the FDIC breached a contract that would have applied the restrictive re-promotion policy for 24, rather than 48 months.  The plaintiff seeks $4,703,103 in damages.

The defendant has moved to dismiss the contract claim for lack of jurisdiction, failure to state a claim, and *res judicata*.  The plaintiff has failed to allege the existence of a contract and his claims are otherwise not viable.  The motion to dismiss is granted, and the transfer complaint is dismissed.

I.      **FACTUAL BACKGROUND**

The complaint alleges that the plaintiff worked at the FDIC in Washington, D.C., at the grade-12 level from November 2014 until June 2018.[2]  The plaintiff's onboarding form with the FDIC, which accompanied the defendant's motion to dismiss, shows that the plaintiff was an FTE employee to whom federal civil service laws applied.[3]  (ECF 31-1 at 2.)  In June 2018, to fill a need in the FDIC's Knoxville, Tennessee office, the plaintiff accepted a new position at the FDIC at the grade-11 level.  Upon accepting this position, the plaintiff signed a "voluntary change to lower grade statement."  (ECF 8-1 at 4 (exhibit submitted to the district court by the plaintiff).)  That statement acknowledged that, although the plaintiff was accepting a position at a lower level, his "current base salary [was] being retained."  (*Id.*)  By retaining his grade-12 salary, the statement the plaintiff signed noted that if the plaintiff were to be re-promoted within 24 months, he would be subject to the FDIC's "re-promotions" policy limiting the amount of any increase in pay that he could receive.

The complaint alleges that at the time the plaintiff signed the statement, FDIC employees typically received a salary increase of 10 percent upon promotion to the next grade, but employees who were re-promoted within 24 months of voluntarily accepting a position at a lower grade did not receive this 10 percent increase.  In 2020, the FDIC revised its policy on re-promotions, increasing to 48 months the amount of time during which employees who voluntarily accepted a lower-graded position had to forego any pay increase commensurate with

---

[2] In resolving the motion to dismiss, the well-pleaded allegations of the plaintiff's transfer complaint are assumed to be true.  *See* Section III, below.

[3] The plaintiff was a federal employee, not a personal services contractor.  His FDIC employment paperwork reflects that he was a full-time employee, with competitive tenure and received health insurance and retirement and other benefits available to federal employees covered by the civil service laws in Title 5 of the U.S. Code.  That paperwork also reflects that the plaintiff executed an "appointment affidavit" when he was hired by the FDIC.  (ECF 33-1 at 2, 11.)

a promotion to a higher grade. This new policy applied to all FDIC employees, regardless of whether they had any pre-existing agreement with the agency. (ECF 1 at 4.)

In 2021, after approximately 38 months at the grade-11 level, the plaintiff was re-promoted to grade 12. Pursuant to the FDIC's revised 2020 policy, he did not receive a commensurate pay increase when he was re-promoted. Under the policy in place when the plaintiff signed the "voluntary change to lower grade statement" in June 2018, however, the re-promotion policy would not have governed his promotion, and he could have received a pay increase.

## II.   PROCEDURAL HISTORY

On November 10, 2022, the plaintiff filed suit in the district court alleging tort, due process, takings, and contract claims. The district court dismissed all claims except the contract claim, which it transferred to this court in September 2024. On October 23, 2024, the plaintiff filed his transfer complaint, alleging that the FDIC breached its contract with the plaintiff for re-promotion and took his compensation without due process.

On December 19, 2024, the defendant moved to dismiss the transfer complaint under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction, and under RCFC 12(b)(6) for failure to state a claim. The plaintiff responded on March 19, 2025, and the defendant replied on April 2, 2025.

Oral argument was held on April 8, 2025, via telephonic conference call.

## III.   JURISDICTION AND STANDARD OF REVIEW

The jurisdiction of the Court of Federal Claims is defined by the Tucker Act, 28 U.S.C. § 1491(a). Under the Tucker Act, the court may entertain "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). The Tucker Act is a jurisdictional statute but "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must also be able to "identify a substantive right for money damages against the United States separate from the Tucker Act itself" before the court can address the merits of a claim. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004); *see Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part). The plaintiff has alleged a breach of contract. A claim for a breach of contract falls within the jurisdiction of the court.

The plaintiff is proceeding *pro se*. As a result, his pleadings are entitled to a more liberal construction than they would be given if prepared by a lawyer. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Giving a *pro se* litigant's pleadings a liberal construction, however, does not divest the *pro se* plaintiff of the responsibility of demonstrating that the complaint satisfies the jurisdictional requirements that limit the types of claims the Court of Federal Claims may entertain. *See Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

In resolving a motion to dismiss for lack of jurisdiction, a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff bears the burden to establish by a preponderance of the evidence that subject-matter jurisdiction exists. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When a plaintiff's asserted jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts and may review evidence outside the pleadings, like exhibits attached to the pleadings. *See id*. (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).[4]

## IV.   DISCUSSION

The plaintiff's claim for breach of contract rests on the "voluntary change to lower grade statement" that he signed when he accepted his grade-11 appointment. The plaintiff argues that under that agreement, which forms the basis for his contract claim, the FDIC committed to apply its re-promotion policy to him for 24 months. Because his re-promotion took place 38 months after his grade-11 appointment, the plaintiff argues that he was "no longer subject to the policy for re-promotions." (ECF 40 at 2.) The FDIC's intervening change in the re-promotion policy period notwithstanding, the plaintiff argues that the agreement he signed only precluded a pay increase if he had been re-promoted within 24 months of accepting his grade-11 position.

### A.   Contract Claim

The plaintiff alleges that the FDIC breached a contract with him because his "voluntary change to lower grade statement" only subjected him to the re-promotion policy for 24 months, not the 48 months required by the updated 2020 policy. The defendant rebuts that no contract exists because federal appointees are not subject to employment contracts.

The existence of a contract is a question of law. *Cal. Fed. Bank v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001). A complaint must "allege facts establishing the existence of a contract with the government." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1381 (Fed. Cir. 2019). Absent legislation to the contrary, federal employees hold their positions and obtain the benefits and responsibilities of those positions through appointment rather than through contractual employment relationships with the government. *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995). A federal employee's relationship with the government "cannot be simultaneously governed by both an appointment and a contract." *Collier v. United States*, 56

---

[4] The defendant has also moved under RCFC 12(b)(6) to dismiss the complaint for failure to state a claim. Because the court lacks jurisdiction over the complaint, the complaint must be dismissed under RCFC 12(b)(1). The aspect of the motion seeking dismissal under RCFC 12(b)(6) is not considered.

Fed. Cl. 354, 356 (2003), *aff'd*, 379 F.3d 1330 (Fed. Cir. 2004).  In other words, any claim for a breach of contract brought by a federal employee against the government for a term or condition of employment is precluded, as the relationship between an employee and the government is not based on a contract.  *Hamlet*, 63 F.3d at 1101 (finding that the policies in a federal employment manual do not create a contract for appointed employees).

Here, the paperwork transferring the plaintiff to his grade-11 position consistently calls his hiring an "appointment."  (ECF 33-1 at 2; *id*. at 4; *id*. at 6; *id*. at 11.)  Additionally, the plaintiff's FDIC Standard Form 50 onboarding paperwork confirms that he was an FTE appointee, not a personal services contractor, given his full-time status and entitlement to federal employee benefits.  (ECF 33-1 at 2.)  Because the plaintiff's employment was by appointment and not by contract, he cannot bring a claim for a breach of contract.  *See Hamlet*, 63 F.3d at 1101.  Although the plaintiff argues that he has no other forum because he has not been subject to an adverse action that could support a claim under the civil service laws, that contention is on its own insufficient to support jurisdiction when it otherwise does not exist.

Because there is no contract between the plaintiff and the FDIC, the Court of Federal Claims lacks subject-matter jurisdiction over the transfer complaint, which must be dismissed.[5]

## B.   The Due Process and Takings Claims

The transfer complaint reiterates claims for a violation of due process and for an unlawful taking of the plaintiff's property interest.  These claims were rejected by the district court.  The

---

[5] The plaintiff has not alleged a violation of the Back Pay Act, 5 U.S.C. § 5596, but his complaint and opposition can be read to request back pay for the time between his re-promotion after 38 months at grade 11 and the expiration of the 48-month re-promotion limitation on salary adjustments.  (ECF 31; ECF 38.)  Because the plaintiff is a *pro se* litigant whose pleadings are to be construed liberally, his implicit reliance on the Back Pay Act will be addressed.  The Back Pay Act provides that:

> [a]n employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—is entitled, on correction of the personnel action, to receive [back pay] for the period for which the personnel action was in effect.

5 U.S.C. § 5596(b)(1).

The plaintiff's delayed reclassification cannot be remedied by the Back Pay Act because the Act "does not apply to any reclassification action," 5 U.S.C. § 5596(b)(3), and the plaintiff's claim arises from his reclassification.  Thus, the Back Pay Act provides no avenue of relief to the plaintiff.

5

defendant argues that these claims are barred by *res judicata*; the plaintiff disagrees. Before determining whether *res judicata* applies, however, the court's jurisdiction over the plaintiff's due process and takings claims must be resolved.

The court lacks jurisdiction to consider claims brought for violations of due process. *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). To the extent the transfer complaint raises a due-process claim, that claim must be dismissed for lack of subject-matter jurisdiction.

The court also lacks jurisdiction over a claim for an unauthorized taking. To bring a claim for a taking in this court, the "claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act." *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993); *see also Moody v. United States*, 931 F.3d 1136, 1142 (Fed. Cir. 2019) ("[a] takings claim cannot be found on the theory that the United States has taken unlawful action"). In other words, "an uncompensated taking and an unlawful government action constitute 'two separate wrongs that give rise to two separate causes of action.'" *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed. Cir. 2001) (quoting *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1364 (Fed. Cir. 1998)). In this dichotomy, a claim for an unlawful or unauthorized taking lies within the jurisdiction of the district courts; a claim for damages resulting from a lawful or authorized taking is within the jurisdiction of this court. *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006).

The plaintiff pursues a claim for a wrongful taking predicated on the unlawful withholding of wages. (ECF 31 at 5; ECF 38 at 3.) At oral argument, the plaintiff confirmed that his claim is based on an unlawful or unauthorized taking of his wages. Because the court cannot hear a claim based on an unlawful or unauthorized taking, that claim too must be dismissed for lack of subject-matter jurisdiction. *See Tabb Lakes, Ltd.*, 10 F.3d at 802; *Moody*, 931 F.3d at 1142; *Rith Energy Inc.*, 247 F.3d at 1365; *Acadia Tech Inc.*, 458 F.3d at 1331.

## V.  CONCLUSION

The plaintiff was appointed to his position with the FDIC and therefore he did not have an employment contract. The "voluntary change to lower grade statement" cannot be a contract establishing the terms and conditions of the plaintiff's employment because he held his position by appointment, not through any contract. In the absence of an enforceable contract, the court lacks jurisdiction to consider the transfer complaint. Jurisdiction is also lacking over the claims for a violation of due process and an unauthorized taking. The motion to dismiss is **GRANTED**, and the transfer complaint is **DISMISSED** pursuant to RCFC 12(b)(1) and 12(h)(3). The Clerk is **DIRECTED** to enter judgment accordingly. No costs are awarded.

It is so **ORDERED.**

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**